Opinion by Judge D.W. NELSON; Dissent by Judge IKUTA.
*775 ORDER
The opinion filed January 18, 2013, and appearing at 706 F.3d 1021, is withdrawn, Carver v. Lehman, 558 F.3d 869, 878-79 (9th Cir.2009), and is replaced by the opinion filed concurrently with this order. Our prior opinion may not be cited as precedent to any court. The parties may file a petition for rehearing and rehearing en banc with respect to the opinion filed together with this order.
IT IS SO ORDERED.
OPINION
D.W. NELSON, Senior Circuit Judge:
Petitioner Richard D. Hurles appeals the district court’s denial of his federal habeas petition challenging his conviction for capital murder and the imposition of his death sentence. Hurles argues that the district court erred in denying his claims of judicial bias and ineffective assistance of sentencing and appellate counsel, and in finding various claims procedurally defaulted. We remand for an evidentiary hearing on Hurles’s claim of judicial bias. We also grant in part Hurles’s motion for a remand pursuant to Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and remand for consideration of appellate counsel’s failure to challenge the trial court’s denial of neurological testing. . We otherwise affirm the district court and deny Hurles’s motion.
I. Background
Hurles, on parole after serving nearly fifteen years for prior crimes, went to the library in Buckeye, Arizona on a November afternoon in 1992. State v. Hurles, 185 Ariz. 199, 914 P.2d 1291, 1293 (1996) (en banc). He attacked librarian Kay Blanton by attempting to rape her and then stabbing her thirty-seven times. Id. Hurles left the library, cleaned himself up, discarded his bloody clothes and fled on a bus to Las Vegas, Nevada. Id. at 1294. The state charged Hurles with burglary, first-degree murder, first-degree felony murder and attempted sexual assault. Id. at 1293.
The court appointed an attorney to represent Hurles, an indigent. That attorney moved for the appointment of cocounsel when the State decided to seek the death penalty. Defense counsel cited numerous reasons necessitating eocounsel, among them, the many witnesses, the State’s intention to utilize forensic experts, the need to maintain a productive client relationship and the dense and detailed preparation necessary for both phases of trial. The trial court summarily denied the motion.
Defense counsel brought a petition for special action in the Arizona Court of Appeals. The petition challenged the denial of the motion to appoint co-counsel as violating Hurles’s rights to due process, equal protection and the adequate assistance of counsel. The real party in interest, the State of Arizona, declined to respond to the petition because it lacked standing to do so. Hurles v. Superior Court, 174 Ariz. 331, 849 P.2d 1, 2 (Ariz.Ct.App.1993). However, the petition named the trial judge, Ruth Hilliard, as the respondent, as required by Arizona law. Ariz. R.P. Special Actions 2(a). This nominal designation “is a mere formality,” and the trial judge “has no interest in the litigation and should have no interest in the way the case is decided.” State ex rel. Dean v. City Court, 123 Ariz. 189, 598 P.2d 1008, 1010-11 (Ariz.Ct.App.1979). Nonetheless, Judge Hilliard filed a responsive pleading, months before the presentation of any evidence in the case against Hurles, that defended her ruling below.
In her response, Judge Hilliard described the murder as “brutal.” She noted that defense counsel had not noticed any *776 defenses, had not disclosed the names of trial witnesses, had not requested an examination of Hurles and that it was not known whether Hurles would present a mental health expert at trial. Judge Hilli-ard nevertheless described the state’s case against Hurles as “very simple and straightforward, compared to other capital cases” and predicted that it would not involve an inordinate amount of witness testimony. She argued that the denial of second counsel was rationally related to the state’s duty to preserve its resources, noting that Hurles had failed to show that his case was “any more complex or difficult to prepare than almost any other criminal case.” Judge Hilliard referenced the rules of professional conduct and stated that if defense counsel believed that she could not render competent representation, she was bound to withdraw and, quite possibly, to withdraw her name from the list of attorneys who contracted with the county to serve as appointed counsel. Judge Hilli-ard concluded, “Clearly there are other attorneys who provide contract services for Maricopa County who would be able to provide competent representation in a case as simple as this.”
The Arizona Court of Appeals published a decision denying Judge Hilliard standing to appear in the special action and ruling it improper for judges to file pleadings in special actions solely to advocate the correctness of an individual ruling in a single case. Hurles, 849 P.2d at 3-5. The court noted that the presiding criminal judge, not Judge Hilliard, requested the filing of a responsive pleading and that there was no contact between Judge Hilliard and the Arizona Attorney General’s office as the pleading was prepared. Id. at 2, n. 2. However, Colleen French, of the Arizona Attorney General’s Office, represented Judge Hilliard in the special action proceeding and later admitted to having had some communication with Judge Hilliard about this matter. In opposing a motion to disqualify the Arizona Attorney General’s Office from representing the state, French referenced her “communications with [Judge Hilliard] during the special action proceedings” but did not describe their nature of content. The record is ambiguous as to the nature and extent of those communications.
Addressing Judge Hilliard’s participation in the special action proceeding, the court of appeals held that it was “of the inappropriate ‘I-ruled-correctly’ sort” Hurles, 849 P.2d at 4. The court explained that “at every level of the judiciary, judges are presumed to recognize that they must do the best they can, ruling by ruling, with no personal stake — and surely no justicia-ble stake — in whether they are ultimately affirmed or reversed.” Id. The court stated that “[t]his principle, which is essential to impartial adjudication, does not change from direct appeal to special action, merely because the judge is a nominal respondent in the latter.” Id. The court then held that Judge Hilliard lacked standing to file a responsive pleading and declined to consider the pleading filed in her name. Id.
Judge Hilliard continued to preside over Hurles’s trial. A jury found Hurles guilty of all charges. Judge Hilliard then conducted an aggravation and mitigation hearing to determine the appropriate sentence for Hurles. Arizona’s capital sentencing scheme provided at the time of trial that Judge Hilliard, sitting alone, would determine the presence or absence of the aggravating factors required by state law for the imposition of the death penalty. Ring v. Arizona, 536 U.S. 584, 588, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The Supreme Court has since held that capital defendants are entitled to a jury determination of any fact that would support the imposition of a death sentence. Id. at 589, 122 S.Ct. 2428. At the aggravation and miti *777 gation hearing, Hurles offered substantial mitigating evidence, including his markedly dysfunctional family background, cognitive deficiencies, long-term substance abuse, mental illness, good behavior while incarcerated and an expert opinion that Hurles suffered diminished capacity at the time of the crime.
Following the presentation of penalty phase evidence, Judge Hilliard found one statutory aggravating factor: that Hurles committed the crime in an especially cruel, heinous and depraved manner. She found two nonstatutory mitigating circumstances: that Hurles suffered a deprived childhood in a clearly dysfunctional home and that he behaved well in prison prior to the underlying crime. She concluded that these circumstances did not warrant leniency and condemned Hurles to die. The Arizona Supreme Court affirmed Hurles’s conviction and sentence on appeal. Hurles, 914 P.2d at 1300.
Hurles filed his first petition for post-conviction review (“PCR”) in 1999. Judge Hilliard presided over this PCR. French, the same attorney who represented Judge Hilliard in the prior special action proceeding, represented the state. Judge Hilliard denied the PCR, and the Arizona Supreme Court summarily affirmed.
Hurles commenced federal habeas proceedings in 2000. He then returned to state court to file a second PCR raising additional claims, including one of judicial bias. Hurles moved to recuse Judge Hilli-ard from presiding over his second PCR. The motion was referred to another judge and denied. Judge Hilliard then denied Hurles’s second PCR, and the Arizona Supreme Court summarily affirmed.
Hurles returned to federal court and filed an amended habeas petition, raising ten claims. The district court denied most of them as procedurally barred. After additional briefing, the district court denied the remainder of Hurles’s claims on the merits and certified four issues for appeal to this Court.
II. Jurisdiction and Standard of Review
We have jurisdiction pursuant to 28 U.S.C. § 2253. We review de novo the district court’s denial of Hurles’s habeas petition, and we review the district court’s findings of fact for clear error. Brown v. Ornoski, 503 F.3d 1006, 1010 (9th Cir.2007). We review for abuse of discretion the determination that a petitioner is not entitled to an evidentiary hearing. Stanley v. Schriro, 598 F.3d 612, 617 (9th Cir.2010). Because Hurles filed his federal habeas petition after 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 (“AEDPA”) governs this case. Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059,138 L.Ed.2d 481 (1997).
AEDPA places limitations on a federal court’s power to grant a state prisoner’s federal habeas petition. Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). When a state court has adjudicated a claim on the merits, we may grant relief only if the adjudication of that claim “(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.” 28 U.S.C. § 2254(d). To determine the relevant clearly established federal law, we look to the holdings, but not the dicta, of the Supreme Court at the time the state court adjudicated the claim on the merits. Terry Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In considering *778 whether the state court unreasonably applied clearly established federal law, we are limited to the record before the state court that adjudicated the claim on the merits. Pinholster, 131 S.Ct. at 1398.
An unreasonable application of federal law results where the “the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner’s case,” or if it “either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.” Williams, 529 U.S. at 407, 120 S.Ct. 1495; see also Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (holding that AEDPA does not require habeas courts to await “some nearly identical factual pattern” before applying a clearly established rule, nor does it prohibit “finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced”) (internal quotation marks and citations omitted). We cannot grant relief unless the state court came to a decision that was objectively unreasonable. Williams, 529 U.S. at 410, 120 S.Ct. 1495.
We cannot find that the state court made an unreasonable determination of the facts in this case simply because we would reverse in similar circumstances if this case came before us on direct appeal. Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir.2004). Instead, we must be “convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record” before the state court. Id. To find the state court’s fact finding process defective in a material way, or, perhaps, completely lacking, “we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court’s fact-finding process was adequate.” Id.
If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court’s decision was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court. Pinholster, 131 S.Ct. at 1401.
III. Discussion
A. Ineffective Assistance of Counsel
Hurles brought various claims of ineffective assistance of counsel (“IAC”) in his federal habeas petition, all of which the district court either dismissed as procedurally defaulted or denied on the merits.
To bring a successful IAC claim, Hurles must show counsel’s deficient performance and prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance requires a showing that trial counsel’s representation fell below an objective standard of reasonableness as measured by prevailing professional norms. Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). “A court considering a claim of ineffective assistance must apply a ‘strong presumption’ that counsel’s representation was within the ‘wide range’ of reasonable professional assistance.” Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting Strick *779 land, 466 U.S. at 689, 104 S.Ct. 2052). Hurles bears the burden of showing “that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, Hurles must show a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. “It is not enough ‘to show that the errors had some conceivable effect on the outcome of the proceeding.’ Counsel’s errors must be ‘so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.’ ” Richter, 131 S.Ct. at 787-88 (quoting Strickland, 466 U.S. at 693, 687,104 S.Ct. 2052).
“The standards created by Strickland and [AEDPA] are both highly deferential, and when the two apply in tandem, review is doubly so.” Richter, 131 S.Ct. at 788 (internal quotation marks and citations omitted). In considering the state court’s denial of Hurles’s IAC claims, “[t]he pivotal question is whether the state court’s application of the Strickland standard was unreasonable.” Id. at 785. We do not ask, in the first instance, whether counsel’s performance fell below Strickland’s standard because “ ‘an unreasonable application of federal law is different from an incorrect application of federal law.’” Id. (quoting Williams, 529 U.S. at 410, 120 S.Ct. 1495). We must “guard against the danger of equating unreasonableness under Strickland with unreasonableness under [AEDPA].... The question is whether there is any reasonable argument that counsel satisfied Strickland’s deferential standard.” Id. at 788. We are mindful that a “state court’s determination that a claim lacks merit precludes federal habeas relief so long as ‘fairminded jurists could disagree’ on the correctness of the state court’s decision.” Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).
1. Procedurally Defaulted IAC Claims
The warden contends that Hurles procedurally defaulted five of his IAC claims. Hurles moves to remand for reconsideration of procedural default in light of Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). We grant the motion as to appellate counsel’s failure to challenge the trial court’s denial of neurological testing, and we remand on that basis. We otherwise deny Hurles’s motion.
The relevant claims include trial counsel’s failure to locate a key guilt phase witness and appellate counsel’s failure to raise (1) the denial of a request for neurological testing, (2) the consideration of improper victim statements, (3) that, generally, Arizona’ death penalty statute fails to narrow the class of death-eligible defendants and (4) that, specifically, Arizona’s F(6) statutory aggravating factor fails to narrow the class of death-eligible defendants.
Hurles procedurally defaulted these claims when he failed to raise them before the Arizona Supreme Court. See Zichko v. Idaho, 247 F.3d 1015, 1021-22 (9th Cir.2001) (“A habeas petitioner must present his claims to the highest state court in order to satisfy the exhaustion requirement of [AEDPA].”). “[T]he procedural default rule barring consideration of a federal claim ‘applies ... if it is clear that the state court would hold the claim procedurally barred.’ ” Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.2002) (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 *780 (1989)). If Hurles presented these IAC claims to the Arizona Supreme Court now, the court would dismiss them as waived. Ariz. R.Crim. P. 32.2 (waiver with narrow exceptions not applicable here). Thus, Hurles’s failure to present these claims to the state supreme court “ ‘in a timely fashion has resulted in a procedural default of those claims.’ ” Zichko, 247 F.3d at 1022 (quoting O’Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)); see also Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), overruled on other grounds by Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012) (holding petitioner “defaulted his federal claims in state court,” so, met “technical requirements for exhaustion” because “no state remedies [were] available to him”) (internal quotation marks and citations omitted).
For the procedural default rule to apply, “the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief.” Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir.2003) (amended) (internal quotation marks and citations omitted). Arizona’s waiver rules are independent and adequate bases for denying relief. Stewart v. Smith, 536 U.S. 856, 859-60, 122 S.Ct. 2578, 153 L.Ed.2d 762 (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are independent of federal law); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir.1998) (finding Arizona waiver rule consistently and regularly applied).
Now that we have found “an independent and adequate state procedural ground, ‘federal habeas review is barred unless [Hurles] can demonstrate cause for the procedural default and actual prejudice, or [can] demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.’ ” Bennett, 322 F.3d at 580 (quoting Noltie v. Peterson, 9 F.3d 802, 804-05 (9th Cir.1993)).
In our amended opinion filed on January 18, 2013, we affirmed the district court’s holding of procedural default as to these claims. After we filed our amended opinion, however, Hurles moved to remand pursuant to Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272, an intervening Supreme Court decision. Martinez held that “[inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner’s procedural default of a claim of ineffective assistance of counsel at trial.” 132 S.Ct. at 1315. In his motion to remand, Hurles argues that this very circumstance exists here: The ineffectiveness of counsel at his post-conviction proceedings caused Hurles to default substantial claims of ineffective assistance of trial and appellate counsel. Thus, he argues, the Martinez exception to procedural default applies, and we should remand for further proceedings as to that issue. We took that motion under submission pending the resolution of Detrich v. Ryan, 740 F.3d 1237 (9th Cir.2013) (en banc).
In Detrich, the district court held several of the petitioner’s claims of ineffective assistance of trial counsel procedurally defaulted because, like Hurles, Detrich failed to raise those claims during his initial state post-conviction relief proceedings. Id. at 1240-41. Sitting en banc, we remanded to the district court pursuant to Martinez to determine whether cause existed to excuse post-conviction counsel’s procedural default. Id. at 1248-49. Detrich confirmed that a remand is appropriate where post-conviction counsel’s failure to raise a claim of ineffective assistance of trial counsel may have caused the procedural default of that claim. It did not speak, however, to the question here, which is whether re *781 mand is appropriate where the defaulted claim alleges the ineffective assistance of appellate counsel.
Nonetheless, we recently decided Nguyen v. Curry, 736 F.3d 1287 (9th Cir.2013), which addresses this very question. In Nguyen, we held that “Martinez applies to the failure to raise not only a claim of trial-counsel IAC, but also a claim of appellate-counsel IAC.” Id. at 1289 (emphasis added). The Nguyen Court thus remanded for “the district court to determine in the first instance whether [the petitioner’s] procedural default should be excused under Martinez.” Id.
To establish cause for the procedural default of an IAC claim, Hurles must show that post-conviction counsel was ineffective pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in not raising a particular claim. Martinez, 132 S.Ct. at 1318. Specifically, Hurles must demonstrate counsel’s performance was deficient and that this deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Hurles also must show that the underlying IAC claim is “substantial,” meaning that it “has some merit.” Martinez, 132 S.Ct. at 1318. We discuss each claim in turn to consider whether Hurles has established cause to excuse the default of his IAC claims.
First, Hurles claims that trial counsel failed to conduct an adequate guilt phase investigation. Trial counsel never disputed that Hurles caused the victim’s death but argued that Hurles was M’Naughton insane at the time of the crime. Ariz.Rev.Stat. 13-502(A) (1993) (“A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong.”); see also Clark v. Arizona, 548 U.S. 735, 748-56, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006) (upholding as constitutional the 1993 amendments to Arizona’s insanity law in effect at the time of Hurles’s trial).
To establish this defense, trial counsel presented expert testimony that Hurles was in a psychotic state of mind at the time of the murder due to brain damage, and so did not know what he was doing or that it was wrong. Hurles also alleges, however, that hours before the murder, he had consensual sex with a woman who was not the victim. Trial counsel did not identify, locate or question this woman.
Certainly, we have held that counsel must conduct an adequate investigation to prepare a mental health defense in a capital case. See, e.g., Bloom v. Calderon, 132 F.3d 1267, 1277-78 (9th Cir.1997). Adequate counsel would have tracked down this witness, as she was the last person to have intimate or substantial contact with Hurles close in time to the crime. Conceivably, she could have provided crucial insight into his behavior and mental state just hours before the murder, which would relate to his insanity defense at the guilt phase. This testimony also might have proved helpful at the sentencing phase of trial. See Ariz.Rev.Stat. § 13 — 703(G)(1) (1991) (listing as a mitigating factor “[t]he defendant’s capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.”). Counsel’s failure to investigate and locate this witness appears deficient. See, e.g., Silva v. Woodford, 279 F.3d 825, 842 (9th Cir.2002) (“[A]n attorney’s failure to investigate, during either the guilt phase or the sentencing phase of a capital trial, can amount to constitutionally deficient performance.”).
*782 Though counsel’s performance likely proved deficient, Hurles has not established prejudice. To do so, Hurles must show a reasonable probability that but for counsel’s failure to track down the witness, the result of the guilt phase would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. Federal post-conviction counsel sought and obtained funding for an investigator to locate this witness. There is nothing in the record to suggest that she has been found, and we can only speculate as to the nature of her testimony and whether it would have helped or undermined Hurles’s insanity defense. Thus, Hurles’s “claim of prejudice amounts to mere speculation,” Cooks v. Spalding, 660 F.2d 738, 740 (9th Cir.1981), and he has not established cause to excuse the procedural default of this claim.
Additionally, Hurles makes several claims of ineffective assistance of appellate counsel. The first is that appellate counsel failed to challenge the trial court’s denial of Hurles’s request for neurological testing to support his insanity defense— his only defense at trial. Hurles contends that the denial of funds violated his due process rights pursuant to Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).
Hurles retained Dr. Marc. S. Walter as an expert at trial. Dr. Walter opined that based on a neuropsychological exam, Hurles suffered from physiological brain damage and recommended a Computer-assisted Topographic Mapping (“CTM”) test to substantiate his opinion. The state’s expert, psychiatrist Dr. Alexander Don, agreed that to verify brain impairment, Hurles would need to undergo “some objective neurological investigation, like a CTM scan.”
Trial counsel requested funds for a CTM examination. The trial court denied this request. At trial, the prosecutor cross-examined Dr. Walter, asking what tests would verify brain damage and whether those tests had been conducted. Dr. Walter testified that the relevant tests that would show brain damage had not been conducted. The state’s expert then testified that “there would need to be further studies” to confirm brain damage and that “if [a] practitioner suspects brain injury, then it ought to be able to be demonstrated objectively on testing.” After the guilt phase ended but before the sentencing hearing, the trial court approved funds for a brain scan. Dr. Drake Duane conducted the CMT and found an “abnormality in the left frontal region” that is associated with “processing difficulty.”
In Alee, the Supreme Court held that “when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense.” 470 U.S. at 76, 105 S.Ct. 1087. The Court held that “when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.” Id. at 83, 105 S.Ct. 1087. Hurles’s sanity was not just a significant factor at trial — it was his entire defense at the guilt phase. This case is not like Vickers v. Stewart, where the petitioner sought out-of-state testing that would have taken several weeks where nearly “every ... expert who provided evidence in the case[] agreed that no amount of testing could establish whether [the petitioner] had in fact suffered a seizure at the time of *783 the offense” — the key to establishing the insanity defense. 144 F.3d 613, 615-16 (9th Cir.1998). Nor did Hurles seek the appointment of a third psychiatrist as did the petitioner in Leavitt v. Arave, 646 F.3d 605, 610 (9th Cir.2011).
Here, the sole defense at guilt was insanity, and Hurles’s expert offered testimony in support of that defense. The state offered a contrary opinion, resulting in a battle of the experts. Both experts agreed that objective testing could show brain damage, but the trial court denied funding for this test until after the guilt phase concluded. The state used the absence of such an objective test to its advantage, tipping the scales of the battle of the experts in its favor.
Appellate counsel’s failure to raise this claim on appeal was deficient. Appellate counsel “unreasonably failed to discover nonfrivolous issues” to appeal, and Hurles’s Ake claim was “clearly stronger than those presented” on appeal. Smith v. Robbins, 528 U.S. 259, 285, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (internal quotation marks omitted). Hurles also can show prejudice from this error, as the brain scan conducted after trial showed brain damage. The Supreme Court held in Martinez that “[allowing a federal ha-beas court to hear a claim of ineffective assistance of [appellate] counsel when an attorney’s errors ... caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken ... with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.” Martinez, 132 S.Ct. at 1318. We find cause sufficient to excuse the procedural default of Hurles’s Ake claim and remand.
Hurles also contends that appellate counsel performed inadequately by failing to challenge the trial court’s consideration of improper victim impact evidence. The trial court considered the presentence report, which included a statement from the victim’s husband that the “death penalty is the only viable option” and that the “death penalty will not change things but the punishment fits the crime.” The report also included the homicide detective’s opinion that the “death penalty is the appropriate sentence.” The victim’s family also made live statements before the trial court. The victim’s husband stated that “the only sentence that’s commensurate with the crime ... is the death penalty.” The victim’s daughter acknowledged that the court could not inflict on Hurles “the amount of violence and horrendous way that [her] mom died” but that the court could make sure no other family had to go through what hers had. Hurles argues that this evidence violated his Eighth Amendment rights pursuant to Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
Hurles has not demonstrated that he was denied the adequate assistance of counsel on appeal. We have held that even where victim impact statements “‘serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant,’ ” that worry falls away when a judge, rather than a jury, sentences a defendant to death. Rhoades v. Henry, 638 F.3d 1027, 1055 (9th Cir.2010) (quoting Booth, 482 U.S. at 508, 107 S.Ct. 2529); see also Gulbrandson v. Ryan, 738 F.3d 976, 996 (9th Cir.2013) (“[Cjourts must assume that the trial judge properly applied the law and considered only the evidence he knew to be admissible.”) (internal quotation marks *784 and citation omitted); State v. Roscoe, 184 Ariz. 484, 910 P.2d 635, 653 (1996) (holding evidence focusing on the impact of a capital crime on the victim’s family is relevant).
Finally, we see no reason to remand Hurles’s claims that appellate counsel failed to raise constitutional challenges to Arizona’s death penalty statute. Hurles argues that the statute generally fails to narrow the class of defendants subject to the death penalty, as does the “especially cruel, heinous or depraved” aggravating factor included in the statute. The district court found these claims unexhausted and procedurally defaulted but addressed them on the merits anyway and denied them in a reasoned decision. Because a court has reviewed Hurles’s claims challenging the constitutionality of Arizona’s death penalty statute, we deny his motion as to these claims. Cf. Martinez, 132 S.Ct. at 1316 (noting that “if counsel’s errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner’s claims”). We remand for consideration by the district court in the first instance Hurles’s claim that appellate counsel failed to raise the Ake claim on appeal. The district court should afford Hurles an evidentiary hearing on this issue if one is warranted and shall enter a new judgment on the remanded claim.
2. Sentencing Counsel
Hurles claims that sentencing counsel failed to explain how Hurles’s mental illness and deficiencies affected his conduct at the time of the crime, depriving him of the effective assistance of counsel. The state court reasonably denied this claim.
As discussed, to bring a successful IAC claim, Hurles must show deficiency and prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
Hurles contends that trial counsel failed to draw a causal nexus between his mental health problems and his conduct at the time of the crime, thus, the mental health evidence presented at sentencing proved worthless. State v. Wallace, 160 Ariz. 424, 773 P.2d 983 (1989) (en banc) (“A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant’s control.”); see also State v. Greene, 192 Ariz. 431, 967 P.2d 106, 117 (1998) (en banc) (“This court has held that family background may be a substantial mitigating circumstance when it is shown to have some connection with the defendant’s offense-related conduct.”) (internal quotation marks and citations omitted).
Counsel did not perform deficiently. First, Supreme Court precedent existing at the time of trial did not require showing a causal nexus between mitigating evidence and the crime. In fact, the Supreme Court had held that “the sentencer in capital cases must be permitted to consider any relevant mitigating factor.” Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (emphasis added) (explaining Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality)); see also Lockett, 438 U.S. at 604, 98 S.Ct. 2954 (“[T]he Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.”). Therefore, counsel did not perform below the objective standard of care when she *785 did not establish a causal nexus between Hurles’s mental conditions and the crime.
Moreover, counsel conducted a rather thorough penalty phase investigation and presented voluminous mitigating evidence. She called four witnesses to testify to Hurles’s dysfunctional family background, mental and psychological disabilities and good behavior while incarcerated before the underlying crime. She commissioned a detailed social history that catalogued Hurles’s maladjusted family circumstances and deprived life, and that contained affidavits from family members and others who knew Hurles. In her briefing before the trial court, defense counsel highlighted Hurles’s intoxication at the time of the crime. Trial counsel also adeptly cross-examined the state’s psychiatrist.
On this record, we cannot say that counsel’s efforts fell short of what the Constitution requires. Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 453, 175 L.Ed.2d 398 (2009) (finding counsel’s failure to investigate and present mitigating evidence, which did not reflect reasonable professional judgment, deficient and prejudicial); Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (finding deficient and prejudicial counsels’ failure to examine court file relating to petitioner’s prior conviction); Wiggins, 539 U.S. at 532, 538, 123 S.Ct. 2527 (granting petition where counsel conducted unreasonably insufficient mitigation investigation that fell short of prevailing professional standards); see also Wong v. Belmontes, 558 U.S. 15, 130 S.Ct. 383, 385, 175 L.Ed.2d 328 (2009) (per curiam) (denying IAC claim where counsel “understood the gravity of th[e] aggravating evidence” and built his mitigation strategy around the overriding need to exclude it). The state court reasonably denied this claim.
3. Appellate Counsel
Hurles alleges that appellate counsel denied him the effective assistance of counsel by not challenging the trial court’s failure to weigh the mitigating evidence cumulatively. The state court reasonably denied this claim.
A criminal defendant enjoys the right to the effective assistance of counsel on appeal. Evitts v. Lucey, 469 U.S. 387, 391-97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). We consider claims of ineffective assistance of appellate counsel according to the standard set forth in Strickland, 466 U.S. 668, 104 S.Ct. 2052. Miller v. Keeney, 882 F.2d 1428, 1433-34 (9th Cir.1989). Hurles must show that appellate counsel’s representation fell below an objective standard of reasonableness, and that, but for counsel’s errors, a reasonable probability exists that he would have prevailed on appeal. Id. at 1434.
The trial judge found beyond a reasonable doubt that Hurles committed the crime in an especially heinous, cruel and depraved manner, a statutory aggravating factor. As to cruelty, the court found that the victim remained conscious while being stabbed thirty-seven times: she attempted to reach a phone to call for help and responded to paramedics who treated her at the scene. She also suffered fifteen defensive stab wounds struggling to protect herself. The court also found that Hurles inflicted gratuitous violence on the victim, establishing that he committed the murder in a heinous or depraved manner. In addition to the fifteen defensive wounds, the victim suffered eight stab wounds to her head and neck, twelve to her torso and two to her legs. Of the thirty-seven wounds, three could have been fatal; the victim bled to death. The court concluded that the attack “had to have been mind-numbing and terrifying and excruciatingly painful” for the victim *786 and that Hurles committed the murder in an especially heinous, cruel and depraved manner.
The trial court also considered the evidence in mitigation. The court found that Hurles did not establish statutory factor (G)(1), A.R.S. § 13-703(G)(1), which concerns diminished capacity, or the ability to appreciate the wrongfulness of one’s conduct or to conform one’s conduct to the requirements of law. While the court found that Hurles is “borderline mentally retarded” and has a learning disorder, he still understood the consequences of his actions and attempted to cover his tracks to evade detection. The trial court accepted evidence that Hurles had been drinking before the crime but found it insufficient to establish incapacity due to intoxication.
The court found that Hurles had proved, by a preponderance of the evidence, two nonstatutory mitigating circumstances:
Number one, the defendant had a deprived childhood and was raised in a clearly dysfunctional home environment. Defendant’s father was abusive to defendant and to his siblings, molested his daughter, had sex with his son’s girlfriend. Defendant’s brothers were in trouble with the law frequently throughout defendant’s life and may have abused alcohol throughout their lives.
Number two, the defendant had good behavior while incarcerated prior to the commission of this crime. While incarcerated^] defendant attended available counseling sessions and performed well in his work as a cook in the prison kitchen.
The court then noted that it had considered other factors Hurles had raised in his briefing, including his low intelligence and lack of education, as well as his inadequate mental health treatment while incarcerated. The court did not find those factors mitigating. The trial court concluded that Hurles had not shown that any of the proven mitigating circumstances were sufficiently substantial to warrant leniency and imposed a sentence of death.
Hurles contends that the trial court considered evidence of his mental deficiencies and intoxication for the limited purpose of determining whether he suffered from diminished capacity at the time of the crime. He argues that the trial court failed, in the final analysis, to consider evidence of his mental deficiencies and intoxication cumulatively with the other mitigating evidence. Hurles claims that counsel erred in failing to raise this issue on appeal.
Counsel did not raise any sentencing issues on appeal, which the Arizona Supreme Court noted. Hurles, 914 P.2d at 1299. Even so, the state supreme court conducted “a thorough and independent review of the record and of the aggravating and mitigating evidence to determine whether the sentence [wa]s justified.” Id. (quoting State v. Brewer, 170 Ariz. 486, 826 P.2d 783, 797 (1992)). The court summarized the trial court’s findings regarding the mitigating evidence and stated:
A difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted a defendant’s ability to perceive, to comprehend, or to control his actions. No such evidence was offered, and the trial judge did not err in concluding that Hurles’s family background was not sufficiently mitigating to require a life sentence.
The judge also found that Hurles had good behavior while incarcerated prior to committing the murder. Taken either by itself or in combination with Hurles’s family background, we do not believe this sufficiently mitigates the quality of the aggravating circumstance. *787 A life sentence would not be more appropriate.
Id. at 1299-1300 (citation omitted).
The state court denied Hurles’s claim of ineffective assistance of appellate counsel, which he raised in his first PCR. The court reasoned that Hurles had not met the Strickland standard, that the state supreme court independently reviewed the sentence and that the outcome on appeal would not have been different if Hurles had presented this claim explicitly. First PCR at 3.
We must consider whether this denial of Hurles’s claim of ineffective assistance of appellate counsel qualifies as objectively unreasonable. In order for us to grant the petition, Hurles must show that the state court’s denial of this claim “was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Richter, 131 S.Ct. at 786-87. Hurles has not made such a showing. Even if we presume deficiency, we find prejudice wanting. Strickland, 466 U.S. at 697, 104 S.Ct. 2052 (holding a court deciding an IAC claim need not address both components of the inquiry if the defendant makes an insufficient showing on one). Hurles has not shown that, but for appellate counsel’s failure to raise this claim, the state court would have invalidated his death sentence. Miller, 882 F.2d at 1434.
The Constitution requires a sentencer to consider any and all mitigation evidence offered by a defendant at trial. Lockett, 438 U.S. at 604, 98 S.Ct. 2954. This mandate requires the consideration of nonstatutory mitigating evidence in order to safeguard individualized decisions that are essential in capital cases and that give due respect to the uniqueness of the individual defendant. Id. at 605, 98 S.Ct. 2954. Moreover, “[j]ust as the State may not ... preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.” Eddings, 455 U.S. at 113-14, 102 S.Ct. 869. In considering mitigating evidence, however, the sentencer “may determine the weight to be given relevant mitigating evidence.” Id. at 114-15, 102 S.Ct. 869.
Arizona law in existence at the time of trial required sentencing courts to consider all mitigating evidence, even if it did not establish a statutory mitigating factor. State v. McMurtrey, 136 Ariz. 93, 664 P.2d 637, 646 (1983) (en banc). In addition, the Arizona Supreme Court specifically directed sentencing courts to consider each mitigating circumstance, whether or not enumerated by statute, both individually and cumulatively. State v. Gallegos, 178 Ariz. 1, 870 P.2d 1097, 1118-19 (1994). Also at the time, the Arizona Supreme Court would conduct a de novo review of the trial court’s rulings concerning aggravation and mitigation to decide, independently, whether the death sentence should stand. Brewer, 826 P.2d at 790-91.
Had counsel presented a claim to the Arizona Supreme Court that the trial court failed to consider the cumulative weight of the mitigating evidence presented, we see no probability that Hurles would have prevailed. At sentencing, the trial court stated on the record that it had considered nonstatutory mitigating circumstances, “including any aspect of [Hurles’s] character, propensities or record” that might call for leniency. The court also noted that it had considered Hurles’s sentencing memorandum, the testimony presented both at trial and the sentencing hearing and the arguments of counsel. In addition to Hurles’s deprived upbringing and good behavior while incarcerated, the trial court *788 noted it had considered Hurles’s low intelligence, lack of education and inadequate mental health treatment while incarcerated.
While the mitigating evidence may have moved us to mercy had we presided over Hurles’s sentencing trial, such a determination is not appropriate on habeas review. Richter, 131 S.Ct. at 786 (holding a reviewing court must not treat the unreasonableness question as a test of its confidence in the result it would reach under de novo review). Instead, we must ask whether reason supports the state court’s conclusion that counsel rendered effective assistance to Hurles, despite not raising this claim on appeal. We find no error in that determination. The record makes plain that the trial court did in fact consider the mitigating evidence offered, as the Constitution requires. Parker v. Dugger, 498 U.S. 308, 314, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) (“We must assume the trial judge considered all this evidence before passing sentence. For one thing, he said he did.”). The Arizona Supreme Court’s independent review of the death sentence imposed here also persuades us that Hurles did not suffer an error requiring federal habeas intervention. Hurles, 914 P.2d at 1299-1300. While AEDPA “stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings ... [i]t preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court decision conflicts with [the Supreme Court’s] precedents.” Richter, 131 S.Ct. at 786. Such a conflict does not exist here. The state court did not err in denying this claim.
B. Judicial Bias
Hurles contends that Judge Hilli-ard’s failure to recuse herself from his trial, sentencing and post-conviction proceedings denied him due process of law. The state court came to an unreasonable determination of the facts in denying this claim. Accordingly, we remand for an evi-dentiary hearing.
The Supreme Court held long ago that a “fair trial in a fair tribunal is a basic requirement of due process.” In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). “Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.” Id.; cf. Mistretta v. United States, 488 U.S. 361, 407, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (“The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship.”). This most basic tenet of our judicial system helps to ensure both the litigants’ and the public’s confidence that each case has been adjudicated fairly by a neutral and detached arbiter.
“The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard,” for a judicial bias claim. Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). While most claims of judicial bias are resolved “by common law, statute, or the professional standards of the bench and bar,” the “floor established by the Due Process Clause clearly requires a ‘fair trial in a fair tribunal’ before a judge with no actual bias against the defendant or interest in the outcome of his particular case.” Id. at 904-05, 117 S.Ct. 1793 (quoting Withrow v. Larkin, 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). The Constitution requires re-cusal where “the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.” Withrow, 421 U.S. at 47, 95 S.Ct. 1456. Our inquiry is objective. Caperton v. A.T. *789 Massey Coal Co., 556 U.S. 868, 881, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).[1] We do not ask whether Judge Hilliard actually harbored subjective bias. Id. Rather, we ask whether the average judge in her position was likely to be neutral or whether there existed an unconstitutional potential for bias. Id. “Every procedure which would offer a possible temptation to the average ... judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the [accused] due process of law.” Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927).
Hurles need not prove actual bias to establish a due process violation, just an intolerable risk of bias. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); see also Caperton, 556 U.S. at 883, 129 S.Ct. 2252 (“[T]he Due Process Clause has been implemented by objective standards that do not require proof of actual bias.”) (citing Lavoie, 475 U.S. at 825, 106 S.Ct. 1580; Mayberry v. Pennsylvania, 400 U.S. 455, 465-66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); Tumey, 273 U.S. at 532, 47 S.Ct. 437). Thus, we must ask “whether ‘under a realistic appraisal of psychological tendencies and human weakness,’ the [judge’s] interest ‘poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.’ ” Caperton, 556 U.S. at 883-84, 129 S.Ct. 2252 (quoting Withrow, 421 U.S. at 47, 95 S.Ct. 1456). Due process thus mandates a “stringent rule” that may sometimes require recusal of judges “who have no actual bias and who would do their very best to weigh the scales of justice equally” if there exists a “probability of unfairness.” Murchison, 349 U.S. at 136, 75 S.Ct. 623. But this risk of unfairness has no mechanical or static definition. It “cannot be defined with precision” because “[c]ireumstances and relationships must be considered.” Id.
For instance, due process requires recusal where the judge has a direct, personal and substantial pecuniary interest in convicting a defendant. Tumey, 273 U.S. at 523, 532, 47 S.Ct. 437. Other financial interests also may mandate recusal, even if less direct. Gibson v. Berryhill, 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); see also Ward v. Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (requiring recusal where village mayor with revenue production role also sat as a judge and imposed revenue-producing fines on the defendant); Lavoie, 475 U.S. at 824-25, 106 S.Ct. 1580 (requiring recusal where (1) a justice of the state supreme court cast the deciding vote and authored an opinion upholding punitive damages in certain insurances cases and (2) that same justice was a plaintiff in a pending action involving the same legal issues from which he obtained a large monetary settlement). Non-pecuniary conflicts “that tempt adjudicators to disregard neutrality” also offend due process. Caperton, 556 U.S. at 878, 129 S.Ct. 2252. A judge must withdraw where she acts as part of the accusatory process, Murchison, 349 U.S. at 137, 75 S.Ct. 623, “becomes embroiled in a running, bitter controversy” with one of the litigants, Mayberry, 400 *790 U.S. at 465, 91 S.Ct. 499, or becomes “so enmeshed in matters involving [a litigant] as to make it appropriate for another judge to sit,” Johnson v. Mississippi 403 U.S. 212, 215-16, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971).
We now turn our attention to the matter at hand. Having catalogued the Supreme Court’s clearly established judicial bias jurisprudence and being mindful of the limitations AEDPA places on us, we must determine whether the state court erred in denying Hurles’s judicial bias claim. We focus our inquiry on Judge Hilliard’s denial of Hurles’s second PCR, as that five-page minute order is the last reasoned decision by the state court on the judicial bias claim. Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir.2005) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002)).
Ordinarily, we cloak the state court’s factual findings in a presumption of correctness. 28 U.S.C. § 2254(e)(1). However, we afford such deference only if the state court’s fact-finding process survives our intrinsic review pursuant to AEDPA’s “unreasonable determination” clause. See Taylor, 366 F.3d at 1000. Here, the state court’s fundamentally flawed fact-finding process, to the extent it constitutes a process, fails our intrinsic review.
In his second PCR, Hurles alleged judicial bias. He argued that Judge Hilliard responded to his special action petition, received contemporaneous copies of each pleading filed in her name, knew the pleadings were framed in terms of her personal opposition to his request for relief, did not object to the tone or content of the pleadings and repeatedly denigrated defense counsel. Second PCR at 1 — 3—1—5. Judge Hilliard then presided over his trial and sentencing, sentenced him to death, presided over and denied his first PCR and presided over his second PCR. Second PCR at 1-2. Judge Hilliard denied Hurles’s judicial bias claim.
Judge Hilliard did not hold an evidentia-ry hearing or provide another mechanism for Hurles to develop evidence in support of his claim, despite her conclusion that Hurles “offer[ed] no factual evidence to support his allegations.” Minute Entry, Aug. 9, 2002, at 2, Hurles v. Schriro, No. CV00-0118-PHX-RCB (D.Ariz.2008), ECF 72-1 at 19 (“Minute Entry”). Even worse, she found facts based on her untested memory of the events, putting material issues of fact in dispute. Judge Hilliard concluded that she did not specifically authorize a pleading to be filed on her behalf, did not provide any input on the responsive brief, that she was a nominal party only and that she did not have any contact with the Arizona Attorney General’s Office. In effect, she offered testimony in the form of her order denying Hurles’s second PCR. Minute Entry at 2. Hurles had no opportunity to contest Judge Hilliard’s version of events that took place years before. Instead, Judge Hilli-ard accepted her factual assertions as true and relied on them to conclude that “a reasonable and objective person would not find partiality.” See Minute Entry, Aug. 9, 2002, at 2, Hurles v. Schriro, No. CV-00-0118-PHX-RCB (D.Ariz.2008), ECF 72-1 at 19 (“Minute Entry”).
Judge Hilliard’s denial of Hurles’s judicial bias claim rests on an unreasonable determination of the facts. We have held repeatedly that where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, “the fact-finding process itself is deficient” and not entitled to deference. Taylor, 366 F.3d at 1001 (“If, for example, a state court makes *791 evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of the facts.”) (internal quotation marks omitted); see also Perez v. Rosario, 459 F.3d 943, 950 (9th Cir.2006) (amended) (“In many circumstances, a state court’s determination of the facts without an evidentiary hearing creates a presumption of unreasonableness.”) (citing Taylor, 366 F.3d at 1000); Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir.2003) (“But with the state court having refused [the petitioner] an evidentiary hearing, we need not of course defer to the state court’s factual findings — if that is indeed how those stated findings should be characterized — when they were made without such a hearing.”); cf. Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir.2002) (“Having refused [petitioner] an evidentiary hearing on the matter, the state cannot argue now that the normal AEDPA deference is owed the factual determinations of the [state] courts.”); Weaver v. Thompson, 197 F.3d 359, 363 (9th Cir.1999) (according no deference where written statements by trial judge to defense counsel “were not subject to any of the usual judicial procedures designed to ensure accuracy”).
This case presents an especially troubling example of defective fact-finding because the facts Judge Hilliard “found” involved her own conduct, and she based those “findings” on her untested memory and understanding of the events. See Buffalo v. Sunn, 854 F.2d 1158, 1165 (9th Cir.1988) (finding error when the court relied on “personal knowledge” to resolve disputed issue of fact); cf. Murchison, 349 U.S. at 138, 75 S.Ct. 623 (“Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination.”).
We cannot conclude, nor could any appellate panel, that the record supports Judge Hilliard’s factual findings. Id. at 1000. Any appellate court to whom this defect was pointed out would be unreasonable in holding that Judge Hilliard’s fact-finding process was adequate. Id. Based on the flaws in the state court’s fact-finding process, we conclude the state court decision resulted in an “unreasonable determination of the facts” and is not entitled to a presumption of correctness. See id. at 999 (holding unreasonable determination clause applies where “the process employed by the state court is defective”).
Where a habeas petitioner has not failed to develop the factual basis of his claim in state court as required by 28 U.S.C. § 2254(e)(2), an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and (2) the allegations, if true, would entitle him to relief. Stanley, 598 F.3d at 624. A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim. Id. (citing 28 U.S.C. § 2254(e)(2)); Second PCR at 1-7, 1-15 (seeking right to litigate judicial bias claim before a trial judge other than Judge Hilliard). Under Townsend, a federal court must grant an evidentiary hearing in circumstances present here: (1) the state courts factual determinations are not fairly supported by the record as a whole, and (2) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing. Townsend, 372 U.S. at 313, 83 S.Ct. 745. Therefore, Hurles is entitled to an evidentiary hear *792 ing if his allegations, if proved, would entitle him to relief. Stanley, 598 F.3d at 624. They would.
In determining whether Hurles enjoyed “a fair trial in a fair tribunal,” Bracy, 520 U.S. at 904, 117 S.Ct. 1793, we must consider whether the probability that Judge Hilliard harbored actual basis against Hurles is too high to be constitutionally tolerable, Withrow, 421 U.S. at 47, 95 S.Ct. 1456. We must ask whether the average judge, in Judge Hilliard’s position, was likely to sit as a neutral, unbiased arbiter or whether there existed an unconstitutional risk of bias. Caperton, 556 U.S. at 881, 129 S.Ct. 2252. But to consider fairly the potential for bias, we must consider the average reasonable judge in the particular circumstances in which Judge Hilliard found herself. Murchison, 349 U.S. at 136, 75 S.Ct. 623 (noting that the probability of unfairness “cannot be defined with precision. Circumstances and relationships must be considered.”). While Hurles does not face the daunting task of proving actual bias in order to establish a due process violation, Lavoie, 475 U.S. at 825, 106 S.Ct. 1580, as the risk of actual bias or prejudgment goes up, so, too, does the strength of his judicial bias claim, see Caperton, 556 U.S. at 883-84, 129 S.Ct. 2252. Thus, a likelihood of unfairness would require recusal even if Judge Hilliard did not actually harbor bias against Hurles. Murchison, 349 U.S. at 136, 75 S.Ct. 623.
The tenor of Judge Hilliard’s responsive pleading in the special action proceeding, by itself, suggest strongly that the average judge in her position could not later preside over Hurles’s guilt phase, penalty trial and post-conviction proceedings while holding “the balance nice, clear and true” between the state and Hurles. Tumey, 273 U.S. at 532, 47 S.Ct. 437. But proof that Judge Hilliard participated in the special action proceedings as more than a nominal party, had contact with French, commissioned or authorized the responsive pleading or provided any input on the brief, would help establish that Judge Hil-liard became “so enmeshed in matters involving [Hurles] as to make it appropriate for another judge to sit,” Johnson, 403 U.S. at 215-16, 91 S.Ct. 1778, or that Judge Hilliard became “embroiled in a running, bitter controversy” with Hurles and his counsel, Mayberry, 400 U.S. at 465, 91 S.Ct. 499. See Murchison, 349 U.S. at 137, 75 S.Ct. 623; Johnson, 403 U.S. at 215, 91 S.Ct. 1778. Such evidence certainly would show an unconstitutional risk of actual bias.
Because Hurles’s allegation of judicial bias would, if proved, entitle him to federal habeas relief, the district court abused its discretion in denying this claim without an evidentiary hearing. Stanley, 598 F.3d at 626.
IV. CONCLUSION
For the foregoing reasons, we remand for an evidentiary hearing on Hurles’s claim of judicial bias, remand for consideration of appellate counsel’s failure to raise Hurles’s Ake claim and otherwise affirm the district court.
AFFIRMED in part; REVERSED in part; REMANDED.

. We cite to Caperton, the Supreme Court's recent decision regarding judicial bias, throughout this opinion. Caperton is not controlling insofar as it announces new clearly established Supreme Court precedent that post-dates the state court decision at issue here, although we do not read Caperton to announce a new rule of law that affects our analysis. We refer to Caperton, however, where we find its analysis of previously established Supreme Court jurisprudence helpful to our resolution of this matter.